## THE WILLAMETTE FALLS CANAL AND LOCK COMPANY, RESPONDENT, *v.* JOHN GORDON, JAS. M. MOORE ET AL., APPELLANTS.

EVIDENCE—DONATION—CERTIFICATE.—A donation certificate is evidence of residence, cultivation, and all other facts recited therein.

DEPUTY CLERK—DISTINCT OFFICE UNDER TERRITORIAL ACT.—The "deputy clerk" under the territorial act of 1856 was an independent officer, and not a mere deputy in the ordinary sense of that term, and was clothed with certain powers and duties separate and distinct from the clerk. "Deputy clerk" being the title of his office, was therefore his proper official signature.

WILLS—PROBATE OF, NECESSARY TO MAKE THEM ADMISSIBLE AS EVIDENCE. In this state county courts have exclusive jurisdiction in the first in-

stance to take the probate of wills. Therefore a deed cannot be admitted in evidence to establish title under a will until such will has been admitted to probate in the county court.

APPEAL from Clackamas County.

The facts are stated in the opinion of the court.

*Johnson & McCown* and *Thayer & Williams*, for appellants.

*Hill, Durham and Thompson*, for respondents.

By the Court, PRIM, C. J.:

The respondent is a private corporation and brought this action to recover the possession of certain real property alleged to be in the possession of John Gordon, and withheld by him from respondent. Gordon filed an answer admitting that he was in the possession of the land in controversy, but denying the ownership of respondent.

He further alleged in his answer that James M. Moore, Maria M. Moore, and Robert M. Moore, were the owners in fee of said land, and that he was in the possession thereof as their tenant. Upon the filing of this answer, the above parties were made defendants by an order of the court, who also filed an answer setting up substantially the same state of facts contained in the answer of Gordon.

The land in controversy is admitted to be a part of the donation claim of Robert Moore, deceased, and that all of the defendants except Gordon are his children. They claim as his heirs, and respondent claims as the grantee of Daniel H. Furgeson, to whom it is claimed the land was devised by the said Robert Moore, deceased. Respondent obtained a verdict and judgment in the court below, and appellants have appealed to this court.

The errors complained of arose on the trial of the action in the admission of certain documentary evidence against the objections of appellants, which are fully set out in the bill of exceptions.

The court admitted in evidence three papers purporting to be copies of certain papers on file in the local land-office

at Oregon city, relating to the donation land claim of Robert Moore, deceased; these papers purported to be the notification and affidavit of said Moore and two other persons, showing the residence and cultivation of said Moore on said land claim.

The original notification and affidavits having been sent to Washington city, under the rules and regulations adopted by the general commissioners of the land department, the papers in question were mere copies thereof, which had been filed in the local land-office.

Exception was taken by appellants to the admission of these papers, on the ground that they were not copies of the original papers.

This regulation having been adopted in pursuance of an act of congress, it is difficult to understand why such copies thus retained in the local land-office should not be treated as records, and why certified copies thereof should not be admitted in evidence. It would certainly be a matter of great convenience to litigants to be allowed to do so, instead of being compelled to send to Washington city, in order to obtain certified copies of the original papers. But in this particular case, we regard it as immaterial whether these papers were properly admitted in evidence, or not, as no injury could have resulted to appellants in consequence of their admission.

A certified copy of the original patent certificate having been offered and admitted in evidence, operated in establishing all the facts which could have been shown by these papers. It has already been held by this court that, "a certificate is evidence of residence, cultivation, and other facts which it recites." (*Keith* v. *Cheney*, 1 Or. 285.)

Respondent offered to read in evidence a certain original paper purporting to be a deed executed by Robert Moore and wife to Daniel H. Furgeson, dated December 1, 1852. This deed was admitted by the court below, so far as to allow the respondent to connect it with any will that said Robert Moore should be shown to have made, and to show under what color of right the possession of respondent may have been commenced.

The admission of this deed in evidence was excepted to, on behalf of appellants, on the ground that it was void for the reason that it was made during the period when settlers under the act of congress, commonly called the donation law, were prohibited from making any contract for the sale of their land claims before patent issued. Whatever view may be taken as to the validity of this deed on account of having been executed prior to the repeal of the proviso contained in the fourth section of said act, we think it was properly admitted in evidence, for the purpose of identifying the land devised by the will of said Robert Moore which refers to said deed for a description of the land devised.

The court also admitted in evidence a certain original deed, purporting to have been made by Daniel H. Furgeson to the Willamette Falls Canal, Milling and Transportation Company, dated March 19, 1853. The ruling of the court in the admission of this deed was excepted to by appellants on the ground that it was void for uncertainty in the description of the land therein conveyed. The land is described as "beginning at the falls on the west side of the Willamette, thence by a line extending westwardly with the course of the north boundary of the basin upon the bluff to a point thirteen rods from the edge of said bluff, thence sixty-two and one-half rods in a southerly direction to a point thirteen rods from the edge of said bluff, thence easterly in a line parallel to the first described course to the bank of said river, and the main channel thereof; thence by said main channel to the northerly line of said basin." It is claimed that this description is so indefinite as to render the land described in the deed uncertain; so much so that the land intended to be conveyed cannot be found by a surveyor with the deed to guide him. Evidence could be introduced to show where the falls are, and also where the north boundary line of the basin is and its course. There is such a place as the basin, and it has a north line, and it is near the falls, in fact the water falls into it on the south side, and but a short distance from this north line. This north line is on the west side of the river. Now the falls can be found, and the north line of the basin can be

found; now run westerly with the corner of the north line of the basin and run that course until you are thirteen rods west of the edge of the bluff; thence sixty-two and a half rods in a southerly direction to a point thirteen rods west of the edge of the bluff; thence easterly by a line parallel with the first described line to the center of the river; thence down the main channel of the river to the northerly line of the' basin. The basin is on the west side of the river, and its north line runs east and extends into the river so the main channel sweeps past it. When we speak of the main channel we mean the center of the stream; still that being a course named in the deed, and the north line of the basin being a fixed monument extending to the water of the river on the west side, and the rule being that when the monuments and courses are at variance, the monuments must govern. The last course of the deed would be a line running from the center of the river at the end of the third corner to the north line of the basin, where it reaches the water of the river on the west side.

This deed, we think, is not void for uncertainty in the description of the land conveyed. The description, we think, is not so indefinite but what a surveyor might find the land with the deed before him. The court admitted in evidence the record of a deed dated November 1, 1857, executed by James K. Kelly to George Abernathy and Leander Holmes. The certificate of acknowledgment of said deed was signed by "F. S. Holland, deputy clerk." The admission of this deed was also objected to by appellants, on the ground that the certificate of acknowledgment fails to disclose who was the principal of such deputy clerk. Under the statute in force in the territory of Oregon, at the time when the acknowledgment of this deed was taken, a deputy clerk was an independent officer, and not a mere deputy in the ordinary sense of that term. He was clothed with certain powers and duties separate and distinct from the clerk. "Deputy clerk" being the title of his office was therefore his proper official signature. Then this certificate, we think, discloses on its face that it was made by an officer with authority to take the acknowledgment of deeds under

the law in force at that time, and the deed therefore was properly admitted.

The respondent also offered to read in evidence a certain instrument purporting on its face to be the last will and testament of the said Robert Moore deceased, and purporting to have been executed on the tenth day of March, 1857. An objection was also interposed by appellant to the admission of this paper on the ground that there was no proof that it had ever been admitted to probate or proven in the county court as required by law. Respondent was then allowed to call witnesses, and after having proved the execution of the will, was allowed to read it in evidence. Appellants excepted to this ruling of the court and assign it as another ground of error upon which they rely to reverse the judgment. The admission of this will without first having been admitted to probate in the county court, we think, was error.

In this state, under the provisions of our code, county courts have the exclusive jurisdiction in the first instance to take the proof of wills. (Civ. Code 282, sec. 869.) Before the paper purporting to be the last will and testament of said Moore could have been admitted in evidence to support title under it, respondents should have shown that it had been admitted to probate in the county court and there proven to be the last will of the said deceased. Then the record thereof would have been admissible to establish title under it in any other court. This seems to be the general doctrine in all the states where they have probate courts with exclusive jurisdiction pertaining to the proof of wills. In *Castro* v. *Richardson*, 18 Cal. 480, the court says: "We understand it to be the settled doctrine of the courts of this country, that where the proceedings in probate are conclusive of the validity or invalidity of the will, it cannot be received in evidence to maintain title founded upon it until it has been admitted to probate."

The same doctrine is held in *Dublin* v. *Chadburn*, 16 Mass. 433; *Loughton* v. *Atkins*, 1 Pick. 535; 30 Miss. 416; Ohio, 8 Hammond, in *Tompkins* v. *Tompkins;* 1 Story, 66, 547. In the last case, Judge Story, in speaking of the

character of the statutes of Massachusetts, said: "They contain no exclusive words, but merely declare that a court of probate shall be held within each county, and a judge appointed for taking the probate of wills, and granting administrations on the estates of persons deceased." And this has been universally understood as giving that court, not merely concurrent, but exclusive jurisdiction as to probate of wills.

The court below having erred in the admission of the original will of said Moore, deceased, the judgment is reversed, and the cause remanded for a new trial.